## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

SOLOMON JOHNSON,

      Plaintiff,

      v.

DEPARTMENT OF
CORRECTIONS, et al.,

      Defendants.

CIVIL ACTION NO. 1:14-cv-00896

(KANE, J.)
(SAPORITO, M.J.)

## <u>REPORT AND RECOMMENDATION</u>

This is a federal civil rights action brought by *pro se* plaintiff Solomon Johnson, a prisoner incarcerated at SCI Benner Township, located in Centre County, Pennsylvania. The plaintiff's original complaint was constructively filed on May 5, 2014, the date when he delivered it to prison officials for mailing. (Doc. 1). *See generally Houston v. Lack*, 487 U.S. 266, 270–71 (1988) (articulating the "prison mailbox rule").

The only defendant named in the original complaint was the Pennsylvania Department of Corrections ("DOC"). On November 10, 2014, the Court dismissed the original complaint *sua sponte* pursuant to 28 U.S.C. § 1915(e)(2) and directed the plaintiff to file an amended complaint limited to claims arising at SCI Benner Township for which his available

administrative remedies have been exhausted. (Doc. 14; Doc. 15; *see also* Doc. 10). On January 12, 2015, the Court received and filed Johnson's amended complaint, which substituted three individual defendants in place of the DOC: (1) Superintendent Ferguson; (2) Mailroom Supervisor Boone; and (3) Dr. Andrew Dancha. (Doc. 23).

On March 10, 2015, Ferguson and Boone filed a Rule 12(b)(6) motion to dismiss the amended complaint for failure to state a claim. (Doc. 38; *see also* Doc. 39). On April 8, 2015, Dr. Dancha filed a separate Rule 12(b)(6) motion to dismiss the amended complaint for failure to state a claim. (Doc. 41; *see also* Doc. 42).

Johnson submitted a second amended complaint, constructively filed on April 6, 2015, the date when he delivered it to prison officials for mailing. (Doc. 43). *See generally Houston*, 487 U.S. at 270–71. His second amended complaint was accompanied by a letter-motion requesting leave to file the second amended complaint, to the extent leave was necessary. (Doc. 43-1). On November 25, 2015, the Court entered an order granting leave to amend with respect to Ferguson and Boone, noting that the federal rules gave Johnson the right to amend as against Dr. Dancha as a matter of course, and treating both motions to dismiss as having been filed

in response to the second amended complaint. (Doc. 49). *See generally* Fed. R. Civ. P. 15(a).

Johnson subsequently filed a brief in opposition to both motions to dismiss. (Doc. 50). The matter is now ripe for decision.

## I.   STATEMENT OF THE CASE

Johnson's second amended complaint presents a smorgasbord of federal civil rights claims arising out of prison conditions during his incarceration at SCI Benner Township.[1] For the most part, his dozens of claims concern three topics: (a) misconduct proceedings or other allegedly retaliatory conduct that stems from his refusal to return from the restricted housing unit ("RHU") to the general prison population; (b) the alleged mishandling of his mail; and (c) the alleged negligence or deliberate indifference of prison medical staff in treating his chronic knee pain. The defendants have moved to dismiss for failure to state a claim,

---

[1] Johnson was transferred to SCI Benner Township in May 2013. His original complaint challenged conditions at two other state prisons where he was previously incarcerated, but those claims were dismissed because all were either barred by the statute of limitations or already the subject of litigation in another federal civil rights action before our sister court in the Western District of Pennsylvania. *See generally Johnson v. Dep't of Corrs.*, No. 1:14-cv-0896, 2014 WL 5823092 (M.D. Pa. Nov. 10, 2014); *Johnson v. Mazurkiewicz*, Civil Action No. 13-531, 2014 WL 4168877 (W.D. Pa. Aug. 20, 2014).

primarily on the grounds that Johnson failed to exhaust his available administrative remedies and failed to allege personal involvement in the allegedly wrongful conduct by the named defendants.

## II.   LEGAL STANDARD

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes a defendant to move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "Under Rule 12(b)(6), a motion to dismiss may be granted only if, accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court finds the plaintiff's claims lack facial plausibility." *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007)). Although the Court must accept the fact allegations in the complaint as true, it is not compelled to accept "unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." *Morrow v. Balaski*, 719 F.3d 160, 165 (3d Cir. 2013) (quoting *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007)).

Under Rule 12(b)(6), the defendant has the burden of showing that no claim has been stated. *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d

1406, 1409 (3d Cir. 1991); *Johnsrud v. Carter*, 620 F.2d 29, 32–33 (3d Cir. 1980); *Holocheck v. Luzerne County Head Start, Inc.*, 385 F. Supp. 2d 491, 495 (M.D. Pa. 2005). Although a plaintiff is entitled to notice and an opportunity to respond to a motion to dismiss, he has no obligation to do so—he may opt to stand on the pleadings rather than file an opposition. The Court must nevertheless examine the complaint and determine whether it states a claim as a matter of law. *Stackhouse v. Mazurkiewicz*, 951 F.2d 29, 30 (3d Cir. 1991); *Anchorage Assocs. v. Virgin Islands Bd. of Tax Review*, 922 F2d 168, 174 (3d Cir. 1990). In deciding the motion, the Court may consider the facts alleged on the face of the complaint, as well as "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).[2]

---

[2] In addition to the second amended complaint itself, the Court has considered the various exhibits submitted by the plaintiff and explicitly incorporated into the second amended complaint by reference. They have also been instrumental in construing the *pro se* plaintiff's disjointed and discombobulated pleadings. The plaintiff has submitted copies—some photocopied, others handwritten—of various papers documenting the grievance and misconduct proceedings discussed in his second amended complaint. Dr. Dancha has also submitted exhibits in support of his motion to dismiss—a copy of records documenting twenty-four fully exhausted healthcare-related grievances filed by Johnson while incarcerated at SCI

*(continued on next page)*

## III.  DISCUSSION

In this case, Johnson asserts that he is entitled to injunctive relief and monetary damages for the following claims:[3]

1.  Allegedly negligent or deliberately indifferent medical treatment during a sick call on August 26, 2013: Johnson's knee brace prescription was discontinued by a non-party physician assistant, he was denied therapeutic ultrasound treatment for his knee that was recommended by his pre-incarceration private physician, and he was charged a co-pay for the encounter in violation of DOC policies;[4]

2.  Allegedly negligent or deliberately indifferent medical treatment in connection with a prescription refill request on June 2, 2014: Johnson requested a renewed prescription for naproxen (500mg), an anti-inflammatory and pain-killing drug prescribed for his knee pain, but his request was denied and he was advised to report to sick call for a lower dosage prescription that was more appropriate for long-term use;[5]

3.  Allegedly negligent or deliberately indifferent medical treatment during a sick call on September 10, 2014: Johnson was prescribed

---

Benner Township and SCI Greensburg, including full documentation of the administrative appeals process for each grievance. But these materials submitted by Dr. Dancha are excluded by the Court and have not been considered in this recommended disposition of the instant motions for dismissal. *See generally* Fed. R. Civ. P. 12(d).

[3] Johnson has presented his various claims as several "Exhibits," but due to inconsistent numbering and several "Exhibits" containing more than a single claim, this report will reference Johnson's individual claims as they are numbered below.

[4] Johnson has labeled this claim "Exhibit 0." It was the subject of Grievance No. 476865.

[5] This is one of two claims Johnson has labeled together as "Exhibit 1." It was the subject of Grievance No. 515013.

Zantac, an antihistamine that blocks the release of stomach acid, for an upset stomach apparently caused by his naproxen prescription, but he was dispensed ranitidine instead,[6] plus he was denied an alternative or stronger anti-inflammatory or pain killer for residual pain in his knee, and he was denied a knee brace and therapeutic ultrasound;[7]

4. An incident on September 22, 2013, in which a non-party corrections officer allegedly called Johnson a "snitch" in front of his entire "pod" of prison cells;[8]

5. A September 27, 2013, custody review decision by the Program Review Committee ("PRC") finding that Johnson should be returned to general population, despite acknowledging Johnson's personal concern for his safety if released into general population;[9]

6. A March 27, 2014, custody review decision by the PRC finding that Johnson should be returned to general population, despite acknowledging Johnson's personal concern for his safety if released into general population;[10]

7. A September 24, 2014, custody review decision by the PRC finding that Johnson should be moved to administrative custody effective September 26, 2014, and a related administrative directive issued on September 26, 2014, documenting his move

---

[6] Ranitidine is the generic version of the same drug marketed under the trade name "Zantac."

[7] This is one of two claims Johnson has labeled together as "Exhibit 1." It was the subject of Grievance No. 527458.

[8] Johnson has labeled this claim as "Exhibit 3." It was the subject of Grievance No. 479339.

[9] Johnson has labeled this claim as "Exhibit 4." It was the subject of Grievance No. 485328.

[10] Johnson has labeled this claim as "Exhibit 4A." It was the subject of Grievance No. 505041.

from disciplinary to administrative custody status; [11]

8. A July 25, 2013, disciplinary hearing in which Johnson was found guilty of refusing to obey an order that he return to general population, for which he was sanctioned with additional disciplinary custody time in the RHU;[12]

9. An August 22, 2013, disciplinary hearing in which Johnson was found guilty of refusing to obey an order that he return to general population, for which he was sanctioned with additional disciplinary custody time in the RHU;[13]

10. A September 19, 2013, disciplinary hearing in which Johnson was found guilty of an unspecified offense, for which he was sanctioned with additional disciplinary custody time in the RHU;[14]

11. An October 15, 2013, disciplinary hearing in which Johnson was found guilty of refusing to obey an order that he accept a cellmate, for which he was sanctioned with additional disciplinary custody time in the RHU;[15]

12. A June 12, 2014, disciplinary hearing in which Johnson was found guilty of refusing to obey an order that he return to general population, for which he was sanctioned with additional

---

[11] This is one of several claims Johnson has labeled together as "Exhibit 9." It was the subject of Administrative Report No. 715160.

[12] Johnson has labeled this claim as "Exhibit 5." It was the subject of Misconduct Report No. 609128.

[13] Johnson has labeled this claim as "Exhibit 6." It was the subject of Misconduct Report No. 614427.

[14] Johnson has labeled this claim as "Exhibit 8." It was the subject of Misconduct Report No. 614482.

[15] Johnson has labeled this claim as "Exhibit 7." It was the subject of Misconduct Report No. 614495.

disciplinary custody time in the RHU;[16]

13. A September 9, 2014, disciplinary hearing in which Johnson was found guilty of refusing to obey an order to return to general population, for which he was sanctioned with additional disciplinary custody time in the RHU;[17]

14. Several other disciplinary hearings on unspecified dates for which no factual allegations are presented other than reference to misconduct report numbers;[18]

15. A grievance submitted on an unspecified date prior to December 3, 2013, in which Johnson complained that various misconduct charges and the repeated denial of his requests to remain in the RHU on non-punitive administrative custody status were done in retaliation for his filing of unspecified grievances;[19]

16. A grievance submitted on July 19, 2013, in which Johnson complained that an item of outgoing legal mail was not mailed until two days after it had been presented to prison officials for mailing, and that it was sent by regular first-class mail instead of certified mail (return receipt requested) as marked;[20]

17. A grievance submitted on December 10, 2013, in which Johnson complained that an item of outgoing legal mail was sent by regular first-class mail instead of certified mail (return receipt

---

[16] This is one of several claims Johnson has labeled together as "Exhibit 9." It was the subject of Misconduct Report No. 704045.

[17] This is one of several claims Johnson has labeled together as "Exhibit 9." It was the subject of Misconduct Report No. 404273.

[18] These include Misconduct Reports No. 609377, 695322, 695103, 695078, and 715101. They were among the several claims Johnson labeled together as "Exhibit 9."

[19] Johnson has labeled this claim as "Exhibit 2." It was the subject of Grievance No. 472361.

[20] This is one of several claims Johnson has labeled together as "Exhibit 10." It was the subject of Grievance No. 470880.

requested) as marked;[21]

18. A grievance submitted on December 12, 2013, in which Johnson complained that a non-party corrections officer deliberately dropped his outgoing mail on the floor;[22]

19. A grievance submitted on February 14, 2014, in which Johnson complained that an item of outgoing legal mail was sent by regular first-class mail instead of certified mail (return receipt requested) as marked;[23]

20. A grievance submitted on January 14, 2014, in which Johnson complained that an item of outgoing personal mail was opened by mailroom staff;[24]

21. A grievance submitted on February 17, 2014, in which Johnson complained that an item of incoming legal mail was opened by prison staff outside Johnson's presence;[25]

22. A grievance submitted on March 18, 2014, in which Johnson complained that a non-party corrections officer delivered his incoming mail to another inmate, placing it in the adjacent cell door before retrieving it and delivering it (unopened) to Johnson;[26]

---

[21] This is one of several claims Johnson has labeled together as "Exhibit 10." It was the subject of Grievance No. 488797.

[22] Johnson has labeled this claim as "Exhibit 11." It was the subject of Grievance No. 489554.

[23] This is one of several claims Johnson has labeled together as "Exhibit 10." It was the subject of Grievance No. 497803.

[24] Johnson has labeled this claim as "Exhibit 12." It was the subject of Grievance No. 494162.

[25] Johnson has labeled this claim as "Exhibit 13." It was the subject of Grievance No. 497767.

[26] Johnson has labeled this claim as "Exhibit 14." It was the subject of Grievance No. 502221.

23. A grievance submitted on April 16, 2014, in which Johnson complained that an item of incoming legal mail was opened by prison staff outside his presence;[27]

24. A grievance submitted on August 20, 2014, in which Johnson complained that various items of outgoing legal mail were not mailed until the day after they had been presented to prison officials for mailing;[28]

25. A grievance submitted on September 20, 2014, in which Johnson complained of continued delays in the presentation of his outgoing legal mail to the United States Postal Service for mailing;[29]

26. A grievance submitted on November 3, 2014, in which Johnson complained that a non-party corrections officer mishandled a draft letter during Johnson's temporary relocation to a holding cage while maintenance staff worked on his cell door;[30]

27. A grievance submitted on November 5, 2014, in which Johnson complained of continued delays in the presentation of his outgoing legal mail to the United States Postal Service for mailing;[31]

28. A grievance submitted on November 14, 2014, in which Johnson complained that an item of incoming legal mail was opened by

---

[27] Johnson has labeled this claim as "Exhibit 15." It was the subject of Grievance No. 505699.

[28] Johnson has labeled this claim as "Exhibit 17." It was the subject of Grievance No. 524010.

[29] Johnson has labeled this claim as "Exhibit 18." It was the subject of Grievance No. 528490.

[30] Johnson has labeled this claim as "Exhibit 14A." It was the subject of Grievance No. 534879.

[31] Johnson has labeled this claim as "Exhibit 19." It was the subject of Grievance No. 534878.

prison staff outside his presence;[32]

29. A grievance submitted on December 1, 2014, in which Johnson complained that a non-party corrections officer refused to sign a postage receipt for outgoing mail, but acknowledging that the letter was nevertheless mailed;[33]

30. A grievance submitted on December 1, 2014, in which Johnson complained that a non-party corrections officer briefly placed an envelope containing incoming legal mail on the tray slot of a neighboring cell door, where another inmate could have seen the envelope and ascertained the identity of its sender;[34]

31. A grievance submitted on December 22, 2014, in which Johnson complained that the PRC, at a hearing reviewing Johnson's custody status, refused to permit him to present his complaints regarding mail handling issues;[35] and

32. A grievance submitted on January 7, 2015, in which Johnson complained of irregularities in the handling and invoicing of his outgoing legal mail.[36]

The defendants have moved under Rule 12(b)(6) to dismiss many of

Johnson's claims on the grounds that he has failed to exhaust available

administrative remedies, that he has failed to allege personal involvement

---

[32] Johnson has labeled this claim as "Exhibit 16." It was the subject of Grievance No. 535605.

[33] Johnson has labeled this claim as "Exhibit 14B." It was the subject of Grievance No. 537862.

[34] Johnson has labeled this claim as "Exhibit 14C." It was the subject of Grievance No. 537794.

[35] Johnson has labeled this claim as "Exhibit 14D." It was the subject of Grievance No. 544455.

[36] Johnson has labeled this claim as "Exhibit 14E." It was the subject of Grievance No. 546037.

by the named defendants in any federal civil rights violations, and that he has otherwise failed to allege sufficient facts to state a plausible claim for relief. For the reasons stated below, it is recommended that the motions be granted and Johnson's second amended complaint be dismissed for failure to state a claim, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## A. Exhaustion of Administrative Remedies

Before bringing a § 1983 action concerning prison conditions, a prisoner must first exhaust all available administrative remedies. 42 U.S.C. § 1997e(a); *see also Booth v. Churner*, 532 U.S. 731, 741 n.6 (2001) ("[A]n inmate must exhaust irrespective of the forms of relief sought and offered through administrative avenues."). "[I]t is beyond the power of this court . . . to excuse compliance with the exhaustion requirement, whether on the ground of futility, inadequacy or any other basis." *Nyhuis v. Reno*, 204 F.3d 65, 73 (3d Cir. 2000). A plaintiff is not required to allege that he has exhausted administrative remedies—failure to exhaust administrative remedies is an affirmative defense that generally must be pleaded and proven by the defendant. *Ray v. Kertes*, 285 F.3d 287, 295 (3d Cir. 2002) ("Prison officials are likely to have greater legal expertise and, as

important, superior access to prison administrative records in comparison to prisoners.") (alteration omitted). Nevertheless, "a complaint may be subject to dismissal under Rule 12(b)(6) when an affirmative defense like the [failure to exhaust available administrative remedies] appears on its face." *ALA, Inc. v. CCAIR, Inc.*, 29 F.3d 855, 859 (3d Cir. 1994); *see also Pena-Ruiz v. Solorzano*, 281 Fed. App'x 110, 112 n.3 (3d Cir. 2008) (per curiam); *Ray*, 285 F.3d at 293 n.5; *Schott v. Doe*, No. CIVA 05-1730, 2007 WL 539645, at *6 (W.D. Pa. Feb. 15, 2007).

Moreover, § 1997e(a) requires "proper" exhaustion of administrative remedies, meaning strict compliance with DOC deadlines and other procedural rules. *Woodford v. Ngo*, 548 U.S. 81, 89–95 (2006). "A procedural default by the prisoner, either through late or improper filings, bars the prisoner from bringing a claim in federal court unless equitable considerations warrant review of the claim." *McKinney v. Kelchner*, No. 1:CV-05-0205, 2007 WL 2852373, at *3 (M.D. Pa. Sept. 27, 2007) (citing *Spruill v. Gillis*, 372 F.3d 218, 227–32 (3d Cir. 2004)). "[T]o properly exhaust administrative remedies prisoners must 'complete the administrative review process in accordance with the applicable procedural rules'—rules that are defined not by [§ 1997e(a)], but by the

prison grievance process itself." *Jones v. Bock*, 549 U.S. 199, 218 (2007) (quoting *Woodford*, 548 U.S. at 88) (citation omitted); *see also Strong v. David*, 297 F.3d 646, 649 (7th Cir. 2002) ("Section 1997e(a) does not delineate the procedures prisoners must follow."). "The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not [§ 1997e(a)], that define the boundaries of proper exhaustion." *Jones*, 549 U.S. at 218. "The only constraint is that no prison system may establish a requirement inconsistent with the federal policy underlying § 1983 and § 1997e(a)." *Strong*, 297 F.3d at 649. Thus, it follows that "grievances must contain the sort of information that the administrative system requires." *Strong*, 297 F.3d at 649. But,

> if prison regulations do not prescribe any particular content for inmate grievances, "a grievance suffices if it alerts the prison to the nature of the wrong for which redress is sought. . . . [T]he grievant need not lay out the facts, articulate legal theories, or demand particular relief. All the grievance need do is object intelligibly to some asserted shortcoming."

*Johnson v. Testman*, 380 F.3d 691, 697 (2d Cir. 2004) (quoting *Strong*, 297 F.3d at 650).

The majority of Johnson's 32 claims are barred by his failure to

exhaust all available administrative remedies before filing suit. As the Third Circuit has observed, "[t]he Prison Litigation Reform Act ('PLRA') prohibits an inmate from bringing a civil rights suit alleging specific acts of unconstitutional conduct by prison officials '*until* such administrative remedies as are available are exhausted.'" *Oriakhi v. United States*, 165 Fed. App'x 991, 993 (3d Cir. 2006) (per curiam) (quoting 42 U.S.C. § 1997e(a)) (emphasis in original). "To satisfy this requirement, a prisoner must exhaust all available administrative remedies *prior to* filing suit . . . ." *Id.* (emphasis added); *see also Millbrook v. United States*, 8 F. Supp. 3d 601, 611 (M.D. Pa. 2014) ("Dismissal of an inmate's claim is appropriate when a prisoner has failed to exhaust his available administrative remedies before bringing a civil rights action. '[E]xhaustion must occur prior to filing suit, not while the suit is pending.'") (citations omitted, brackets in original).

Johnson initiated this action with the filing of his original complaint on May 5, 2014. The events underlying his Claims No. 2, 3, 7, 12, 13, 24, 25, 26, 27, 28, 29, 30, 31, and 32 all transpired *after* this lawsuit was

initiated.[37] In addition, although the initial events underlying Claims No. 6, 20, 21, and 22 occurred before May 5, 2014, based on the allegations of the second amended complaint and the exhibits explicitly incorporated into it by reference, Johnson did not complete the administrative appeals process with respect to each of these claims until *after* this lawsuit was initiated.[38] Clearly, with respect to these claims, Johnson's administrative remedies were not exhausted prior to the initiation of suit. *See Oriakhi*, 165 Fed. App'x at 993. "The fact that he completed the administrative review process before the District Court reached the exhaustion question is of no consequence. . . . [A] prisoner may not fulfill the PLRA's exhaustion requirement by exhausting administrative remedies after the filing of the complaint in federal court." *Id.*

Accordingly, it is recommended that Johnson's Claims No. 2, 3, 6, 7, 12, 13, 20, 21, 22, 24, 25, 26, 27, 28, 29, 30, 31, and 32 be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim.

---

[37] The earliest of these events occurred on June 2, 2014, four weeks after Johnson signed and mailed his complaint to the Court for filing.

[38] Johnson's final appeal with respect to the grievance underlying Claim No. 20 was denied on May 8, 2014. His final appeal with respect to Claims No. 6, 21, and 22 were denied in June 2014.

## B. Personal Involvement

Johnson has brought this federal civil rights action under 42 U.S.C.

§ 1983. Section 1983 provides in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. Section 1983 does not create substantive rights, but

instead provides remedies for rights established elsewhere. *City of*

*Oklahoma v. Tuttle*, 471 U.S. 808, 816 (1985). To establish a § 1983 claim,

the plaintiff must establish that the defendants, acting under color of state

law, deprived the plaintiff of a right secured by the United States

Constitution. *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1141 (3d Cir.

1995). To avoid dismissal for failure to state a claim, a civil rights

complaint must state the conduct, time, place, and persons responsible for

the alleged civil rights violations. *Evancho v. Fisher*, 423 F.3d 347, 353 (3d

Cir. 2005).

Here, Johnson seeks to hold Superintendent Ferguson, Mailroom

Supervisor Boone, and Dr. Andrew Dancha liable for the allegedly unconstitutional conduct of their subordinates. But "[c]ivil rights claims cannot be premised on a theory of *respondeat superior*. Rather, each named defendant must be shown, via the complaint's allegations, to have been personally involved in the events or occurrences which underlie a claim." *Millbrook*, 8 F. Supp. 3d at 613 (citation omitted). As previously explained by the Third Circuit:

> A defendant in a civil rights action must have personal involvement in the alleged wrongs . . . . [P]ersonal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence. Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity.

*Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988).

The complaint fails to allege any personal involvement whatsoever by Superintendent Ferguson. The only facts alleged with respect to Ferguson concern her supervisory role as the superintendent of the prison where the alleged violations took place.[39] It is well-settled that if a prison

---

[39] Indeed, as Johnson has admitted in his complaint, Ferguson had not yet been promoted to the position of superintendent for much of the time period involved in his complaint. It is also worth noting that none of the various misconduct charges for which Johnson was disciplined

*(continued on next page)*

official's only involvement is investigating or ruling on an inmate's grievance after the incident giving rise to the grievance has occurred, there is no personal involvement on the part of that official. *See id.* at 1208.

The complaint fails to allege any personal involvement by Supervisor Boone. The only facts alleged with respect to Boone, even generically as "the mailroom supervisor," concern his supervisory role and his involvement in investigating and responding to Johnson's grievances regarding the processing of his outgoing legal mail, and thus there is no personal involvement by Boone in the allegedly unconstitutional conduct.[40]

---

involved any sanction other than his placement in disciplinary custody for periods of 30 to 60 days, which generally does not implicate any protected liberty interests. *See Sandin v. Conner*, 515 U.S. 472, 486 (1995); *Smith v. Mensinger*, 293 F.3d 641, 653 (3d Cir. 2002). Ferguson's only apparent role with respect to any of the grievances at issue was as the acting superintendent, ruling on some of Johnson's later grievance appeals.

[40] Specifically, Johnson has complained that, on multiple occasions, mailroom staff sent his outgoing mail addressed to federal courts by regular first-class mail, instead of by certified mail (return receipt requested), as he had directed. The complaint does not allege that any of this mail failed to reach its intended recipient, or that it was delayed and caused him to miss a court deadline. *See West v. Endicott*, No. 06-C-763, 2008 WL 906225, at *8 (E.D. Wis. Mar. 31, 2008) (no plausible showing that inmate's ability to access the courts was affected where papers were received and accepted by the court to which they were addressed). Indeed, on at least one occasion Johnson explicitly disclaimed any violation of his right to access the courts. Boone's only involvement appears to have been to investigate and respond to the grievance officers' inquiries.

*See id.*

The complaint fails to allege any personal involvement by Dr. Dancha. The only facts alleged with respect to Dancha concern his supervisory role with respect to Johnson's medical treatment, which on the day in question was administered by a non-party physician assistant, and thus there is no personal involvement by Dancha in the allegedly unconstitutional conduct.[41] *See Millbrook*, 8 F. Supp. 3d at 613.

---

[41] Specifically, Johnson has alleged that the non-party physician assistant discontinued a prescription for a knee brace, he denied therapeutic ultrasound treatment for Johnson's knee that had been recommended by his private physician, and he charged Johnson a co-pay in violation of DOC policies. But a mere difference of opinion between prison medical staff and an inmate regarding the diagnosis or treatment received by the inmate does not constitute deliberate indifference. *See Monmouth County Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 346 (3d Cir. 1987); *Farmer v. Carlson*, 685 F. Supp. 1335, 1339 (M.D. Pa. 1988). Nor does a prison doctor's use of a different treatment regimen than that prescribed by a private physician. *See Johnson v. Cash*, 557 Fed. App'x 102, 104 (3d Cir. 2013) (per curiam). To the extent that Johnson seeks relief for the violation of DOC policies, these regulations are not cognizable under 42 U.S.C. § 1983. *See Faircloth v. Schwartz*, Civil Action No. 12-cv-02764-REB-KLM, 2014 WL 4466663, at *21 (D. Colo. Sept. 10, 2014) ("[Because] administrative regulations cannot create private causes of action outside the scope of substantive rights . . . [an inmate] has no right to enforce prison regulations through a private legal action, except to the extent that those regulations implicated constitutional rights.") (citing *Alexander v. Sandoval*, 532 U.S. 275, 289–93 (2001)); *see also Bullard v. Scism*, 449 Fed. App'x 232, 235 (3d Cir. 2011) (per curiam) ("[E]ven if the [BOP's] regulation were violated, its violation is not actionable.").

Accordingly, it is recommended that the remainder of Johnson's federal civil rights claims—Claims No. 1, 4, 5, 8, 9, 10, 11, 14, 15, 16, 17, 18, 19, and 23—be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim.

## C. State Law Claims

Johnson has also asserted state law professional negligence claims against Dr. Dancha. But where a district court has dismissed all claims over which it had original jurisdiction, the Court may decline to exercise supplemental jurisdiction over state law claims. 28 U.S.C. § 1367(c)(3). Whether the Court will exercise supplemental jurisdiction is within its discretion. *Kach v. Hose*, 589 F.3d 626, 650 (3d Cir. 2009). That decision should be based on "the values of judicial economy, convenience, fairness, and comity." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988). Ordinarily, when all federal law claims have been dismissed and only state law claims remain, the balance of these factors indicates that these remaining claims properly belong in state court. *Cohill*, 484 U.S. at 350. Finding nothing in the record to distinguish this case from the ordinary one, the balance of factors in this case "point[s] toward declining to exercise jurisdiction over the remaining state law claims." *See Cohill*, 484

U.S. at 350 n.7. Therefore, it is recommended that Johnson's state-law professional negligence claim be dismissed without prejudice pursuant to 28 U.S.C. § 1367(c)(3).

## D. Leave to Amend

The Third Circuit has instructed that if a civil rights complaint is vulnerable to dismissal for failure to state a claim, the district court must permit a curative amendment, unless an amendment would be inequitable or futile. *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002). Here, it is clear that further amendment would be futile. Johnson has already amended his complaint twice, to no avail. The majority of his claims are barred for failure to exhaust administrative remedies before filing this civil action, a precondition to suit that cannot be cured by amendment. Most of his remaining claims are facially meritless, or even frivolous, and any amendment seeking to name additional defendants with direct involvement in the alleged unconstitutional conduct for which Johnson has exhausted his administrative remedies would now be barred by the applicable two-year statute of limitations. *See Bougher v. Univ. of Pittsburgh*, 882 F.2d 74, 78–79 (3d Cir. 1989); *see also* 42 Pa. Cons. Stat. Ann. § 5524. It is therefore recommended that this action be dismissed

*without* leave to amend.

## IV.   PLRA "THREE STRIKES" WARNING

The plaintiff is hereby notified that a prisoner may not bring a civil

action or appeal a civil judgment under 28 U.S.C. § 1915,

> if the prisoner has, on 3 or more prior occasions, while
> incarcerated or detained in any facility, brought an action
> or appeal in a court of the United States that was
> dismissed on the grounds that it is frivolous, malicious,
> or fails to state a claim upon which relief may be granted,
> unless the prisoner is under imminent danger of serious
> physical injury.

28 U.S.C. § 1915(g).

If this recommended disposition is adopted by the presiding United

States District Judge, the dismissal of this action for failure to state a

claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure will

constitute a "strike" under 28 U.S.C. § 1915(g), and the accumulation of

additional strikes may bar the plaintiff from proceeding *in forma pauperis*

in later cases absent a showing of imminent danger. *See generally Byrd v.*

*Shannon,* 715 F.3d 117, 126 (3d Cir. 2013) (articulating Third Circuit

standard for application of § 1915(g) "three strikes" rule).[42]

---

[42] It should be noted that, although the instant report only
recommends dismissal of Johnson's federal claims for failure to state a
*(continued on next page)*

## V.   RECOMMENDATION

For the foregoing reasons, it is recommended that:

1.    The defendants' motions to dismiss (Doc. 38; Doc. 41) be

**GRANTED**;

2.    The plaintiff's second amended complaint (Doc. 43) be

**DISMISSED** for failure to state a claim pursuant to Rule 12(b)(6) of the

Federal Rules of Civil Procedure; and

3.    The Clerk be directed to mark this case as **CLOSED**.

Dated: March 3, 2016              _s/ Joseph F. Saporito, Jr._
                                  **JOSEPH F. SAPORITO, JR.**
                                  **United States Magistrate Judge**

---

claim, the disposition of pendent state-law claims is a "non-event" that does not factor into the § 1915(g) "three strikes" analysis. *See Galloway v. Pennsylvania*, Civil Action No. 13-960, 2013 WL 5231412, at *3 n.3 (W.D. Pa. Sept. 17, 2013); *Luedtke v. Bertrand*, 32 F. Supp. 2d 1074, 1076 n.1 (E.D. Wis. 1999).

# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SOLOMON JOHNSON, | |
| Plaintiff, | CIVIL ACTION NO. 1:14-cv-00896 |
| v. | (KANE, J.)<br>(SAPORITO, M.J.) |
| DEPARTMENT OF<br>CORRECTIONS, et al., | |
| Defendants. | |

## <u>NOTICE</u>

NOTICE IS HEREBY GIVEN that the undersigned has entered the

foregoing Report and Recommendation dated March 3, 2016. Any party

may obtain a review of the Report and Recommendation pursuant to Local

Rule 72.3, which provides:

> Any party may object to a magistrate judge's proposed
> findings, recommendations or report addressing a motion
> or matter described in 28 U.S.C. § 636(b)(1)(B) or making
> a recommendation for the disposition of a prisoner case
> or a habeas corpus petition within fourteen (14) days
> after being served with a copy thereof. Such party shall
> file with the clerk of court, and serve on the magistrate
> judge and all parties, written objections which shall
> specifically identify the portions of the proposed findings,
> recommendations or report to which objection is made
> and the basis for such objections. The briefing
> requirements set forth in Local Rule 72.2 shall apply. A
> judge shall make a de novo determination of those
> portions of the report or specified proposed findings or

recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

**Dated: March 3, 2016**                    *s/ Joseph F. Saporito, Jr.*
                                        **JOSEPH F. SAPORITO, JR.**
                                        **United States Magistrate Judge**